# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DEBORAH HENSON,

        Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.

Civil Action No. 2:16cv587

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

Plaintiff, Deborah Henson ("Henson"), brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Henson's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. ECF No. 3 (citing 42 U.S.C. §§ 401–434).

An order of reference assigned this matter to the undersigned on December 28, 2016. ECF No. 9. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Local Civil Rule 72, this Court recommends that Henson's motion for summary judgment, ECF No. 11, be **GRANTED IN PART**, that the Commissioner's motion for summary judgment, ECF No. 13, be **DENIED**, and the decision of the Commissioner be **VACATED** and **REMANDED**.

# I.   PROCEDURAL BACKGROUND

Henson protectively filed for disability on May 29, 2012. R. 254–62.[1]   The Commissioner denied Henson's application on October 10, 2012 and, upon reconsideration, on July 5, 2013. R. 181–85, 189–95. At Henson's request, Administrative Law Judge ("ALJ") James J. Quigley heard the matter on April 15, 2014 and received testimony from Henson (who was represented by counsel) and an impartial vocational expert ("VE"). R. 95–112. On May 29, 2014, ALJ Quigley issued a fully favorable decision finding that Henson was under a disability from March 19, 2012, the alleged onset date of disability, until the date of the decision. R. 165–74.

On July 8, 2014, the Appeals Council issued a notice to Henson stating that it was setting aside the favorable hearing decision and sending the case back to an ALJ for further action and a new decision. R. 227–31. On September 3, 2014, the Appeals Council issued an order remanding the case to the ALJ for further proceedings. R. 175–80. The Appeals Council's order instructed the new ALJ to "[o]btain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record . . . [t]he additional evidence may include, if warranted and available, updated psychological/psychiatric and orthopedic consultative examinations and medical source statements about what the claimant can still do despite the impairments." R. 178. On February 2, 2015, a second hearing was held before ALJ O. Price Dodson. R. 113–40. Testimony was taken from Henson (who was again represented by counsel), and an impartial VE. *Id.* On March 24, 2015, ALJ Dodson issued an unfavorable decision. R. 47–66.

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

On July 31, 2016, the Appeals Council denied Henson's request for review of the new decision. R. 1–5. Therefore, ALJ Dodson's decision stands as the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. § 404.981. Having exhausted all administrative remedies, Henson filed a complaint with this Court on October 7, 2016. ECF No. 3. The Commissioner answered on December 23, 2016. ECF No. 7. In response to the Court's order, Henson and the Commissioner filed motions for summary judgment, with supporting memoranda, on February 6 and March 3, 2017, respectively, and Henson filed a reply on March 24, 2017. ECF Nos. 10, 11–15. As neither party has indicated special circumstances requiring oral argument, the case is deemed submitted for a decision.

## II.    FACTUAL BACKGROUND

### A.  *Henson's Background*

Deborah Henson was born in 1964 and was 48 years old on March 19, 2012, the alleged onset date of her disability. R. 59. She graduated from high school and has an associate's degree in applied science. R. 117. She previously worked as a customer service clerk with a logistics company, R. 120, a purchasing assistant for a packaging company, R. 121, and an assistant manager at a retail store, R. 121–22. Henson has not worked since March 2012. R. 119. Henson lives with a daughter, who was 30 years old at the time of the second hearing in 2015, a son who was 24 years old, and a granddaughter who was 8 years old. R. 117. Her daughter is employed and assists Henson financially. R. 118. Henson has not received worker's compensation since her alleged disability date. R. 119.

## B. Henson's Medical Record

On March 19, 2012, Henson visited Rajiv B. Nanavaty, M.D., for left upper extremity paresthesia. R. 404–07. Dr. Nanavaty noted that Henson's cervical spine motion was abnormal and severely restricted in all directions. R. 406. Henson also had an ataxic gait and noticeable paresis. *Id.* Dr. Nanavaty diagnosed Henson with cervical spondylosis with myelopathy, and instructed her to avoid activities with sudden neck movements, driving, riding horses, biking, running, jumping, and similar activities. R. 407. Dr. Nanavaty also instructed Henson to take one week off from work. *Id.*

Dr. Nanavaty ordered a cervical spine MRI, which showed no spinal cord compression, no myelomalacia of the spinal cord, no neuroforamina stenosis, no disc protrusion, and no acute cervical spine abnormalities. R. 409. An electromyography and nerve conduction study were both within normal limits. R. 410.

On March 30, April 26, and May 10, 2012, Henson visited Reeta M. Arora, M.D., with complaints of neck and left arm pain. R. 421–27. Dr. Arora noted that Henson had a very limited range of motion and tenderness to mild palpation. R. 421. Henson had a normal rheumatic screen, the strength of her upper extremities was at least 4/5, and she was negative for Hoffman's sign. *Id.* She had normal muscle tone and bulk and no muscle atrophy. R. 423. Dr. Arora gave Henson two steroid injections, increased Henson's does of Gabapentin, and recommended gentle stretching and range of motion exercises, but was "quite at a loss to make further recommendations." R. 421, 426.

On May 25, 2012, Henson treated with Vivian U. Mapanao, M.D., for neck and chest swelling with neck pain radiating to her left arm. R. 434–37. Henson had chronic neck, facial, and chest swelling, but a CT scan of her neck was unremarkable. R. 436. She had muscle aches,

but no joint swelling, muscle spasms, or bony abnormalities. R. 435–36. Her range of motion was within normal limits. R. 436.

On June 13, 2012, Henson filled out an adult function report, where she reported doing some light household chores, watching television, preparing meals, helping to care for her granddaughter and dog, going outside every day, and grocery shopping. R. 297–303. Henson also noted that her condition made it more difficult to care for herself, cook meals, do chores, and drive. R. 298–301.

On July 2, 2012, Henson visited Jane M. Derrig, D.O., for fibromyalgia. R. 509–12. Dr. Derrig noted that Henson had pain on range of motion and pain on palpation, but normal range of motion in her head, neck, and shoulders. R. 511. Henson had 5/5 normal muscle strength. *Id.*

On July 5, 2012, Henson again treated with Dr. Mapanao with complaints of chronic neck, upper back, and shoulder pain. R. 630–33. Henson told Dr. Mapanao that the pain was aggravated by lifting, carrying, pulling, pushing, reaching overhead, and prolonged sitting and standing. R. 630. Dr. Mapanao noted that Henson had a limited neck range of motion due to pain and swelling in the neck, face, and chest. R. 632. Henson also had some limitation to her shoulder range of motion due to pain. *Id.*

On August 2, 2012, Henson visited Doris M. Rice, M.D., a rheumatologist. R. 513–14. Dr. Rice diagnosed Henson with a history of fibromyalgia, polyarthritis, and polyarthralgias. R. 514. She prescribed Lyrica and Dolobid. *Id.*

On August 6, 2012, Henson returned to Dr. Rice. R. 620. Dr. Rice assessed Henson with fibromyalgia, which was very symptomatic at the time. *Id.* Dr. Rice noted no evidence of a connective tissue order. *Id.* She prescribed Lyrica and Cymbalta and recommended stretching and water aerobics. *Id.*

On September 20, 2012, Henson treated with Dr. Mapanao once again. R. 625–29. Henson told Dr. Mapanao that she could not drive due to pain and that the pain was aggravated by prolonged sitting and walking. R. 625. Dr. Mapanao noted that Henson had limited neck range of motion due to muscle spasm, muscle aches, and cramping, but that Henson had no joint swelling. R. 627.

On February 5, 2013, Henson began physical therapy. R. 544–61. Her left lower extremity was limited in all planes. R. 546. She presented as a good candidate for physical therapy. *Id.* She was, however, discharged on February 18, 2013, after only three visits, with no change since her initial evaluation. R. 560. She was discharged because of increasing pain and poor tolerance of the low back exercises. R. 559, 561.

On May 20, 2013, Henson filled out another adult function report. R. 358–65. She reported preparing meals, watching television, doing chores with difficulty, going outside two or three times a week, and occasional grocery shopping. R. 358–61. She indicated that she is not responsible for the care of anyone else. R. 359

On August 14, 2013, lumbar spine x-rays were performed. R. 605. The x-rays revealed mild degenerative disc disease, facet degenerative changes, and atherosclerotic changes of the aorta. *Id.* Cervical spine and lumbar spine x-rays were performed on September 4, 2013. R. 601–03. The cervical spine x-rays showed "no visualized vertebral compression fractures or subluxations." *Id.* at 603. The lumbar spine x-rays showed "normal alignment of the lumbosacral spine," "no central canal stenosis, no neural foramina stenosis," and a "mild disc protrusion at L5-S1." R. 602. A cervical spine MRI was performed on November 7, 2014. R. 651. The MRI revealed normal alignment, but a "mild posterior bulging of disc annulus at C5-6." R. 651.

Henson treated with Western Tidewater Free Clinic on numerous occasions from December 2012 through November 2014, with complaints of low back pain, left leg numbness, and shoulder muscle spasms. R. 562, 565, 568, 590, 595, 600, 604, 666. She was assessed on multiple occasions with fibromyalgia. *See, e.g.*, R. 590, 595, 666.

## C. Medical Opinions

The medical opinions offered in this case are those of Dr. Mapanao and state agency physicians Carolina Bacani-Longa, M.D., and Tony Constant, M.D. On July 11, 2012, Dr. Mapanao opined that Henson should not lift, carry, pull, push, or reach overhead, and cannot sit, stand, bend, climb, or drive for a prolonged period of time due to her severe cervicalgia. R. 357. Dr. Mapanao also opined that Henson was unable to work full time from March 10, 2012, until an indefinite time. *Id.*

On October 31, 2012, Dr. Mapanao opined in a medical source opinion that Henson had a marked limitation on her ability to sustain concentration, persistence, and pace, that Henson could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift twenty pounds, that Henson could sit, stand, or walk for less than two hours in an eight-hour workday, and that Henson would have to miss more than four days a month as the result of her medical problems. R. 540.

On October 9, 2012, Dr. Bacani-Longa filled out a disability determination explanation. R. 141–49. Dr. Bacani-Longa opined that Henson could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for two hours in a normal workday, sit about six hours in a normal workday, and must periodically alternate sitting and standing to relieve pain and discomfort. R. 145–46. Dr. Bacani-Longa further opined that Henson could frequently crawl, crouch, or kneel, occasionally stoop or climb ramps or stairs, and never climb ladders,

ropes, or scaffolds. R. 146. Dr. Bacani-Longa added that Henson had limited overhead reaching ability. R. 146–47. Dr. Bacani-Longa determined that Henson was only capable of sedentary work, but that she was not disabled under sedentary grid 201.21.[2] R. 148.

On July 2, 2015, Dr. Constant filled out a disability determination explanation. R. 151–63. Dr. Constant likewise concluded that Henson was not disabled under grid 201.21. R. 161–62. Dr. Constant opined that Henson could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for two hours in a normal workday, sit for about six hours in a normal workday, and must periodically alternate sitting and standing to relieve pain and discomfort. R. 159. Dr. Constant further opined that Henson could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl, and never climb ladders, ropes, or scaffolds. *Id.* Dr. Constant also added that Henson had limited overhead reaching ability. R. 160. According to Dr. Constant, the maximum sustained work capability that Henson could undertake was sedentary. R. 161.

### D. Testimony before the ALJ

#### (Deborah Henson)

At the hearing on February 2, 2015, Henson testified that she lived with her two children and her granddaughter. R. 113, 117. She testified that she last worked for Coastal Logistics in

---

[2] The Commissioner may meet her burden through proper reference to the SSA's grid rules. *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). The grid rules provide numbered tables for sedentary, light, and medium exertional capacity (tables 1, 2, and 3, respectively). 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ must first select which table to use based on the claimant's exertional capacity. *Id.* Next, after considering the claimant's age, education, and previous work experience, the grid directs a finding of "disabled" or "not disabled." *Id.* The grid considers only exertional limitations, which are limitations that affect the claimant's ability to meet the strength demands of jobs, such as limitations in sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id.* at 200.00(d)–(e); 20 C.F.R. § 404.1569(b). If the grid directs a finding of "not disabled," the ALJ must still consider the claimant's nonexertional limitations. *Roberts v. Schweiker*, 667 F.2d 1143, 1145 (4th Cir. 1981). If the grid directs a finding of "disabled," the claimant is considered disabled and the ALJ goes no further. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 at 200.00(a); 20 C.F.R. § 404.1569a(b), (d).

Suffolk, Virginia, as a customer service representative. R. 119–20. She testified that she was fired from Coastal Logistics for missing too much work due to her pain. R. 120. She testified that she worked as a receptionist, and later as a purchasing assistant, for Bi-Tech Packaging. R. 121. She also worked at a clothing store as an assistant manager. R. 121–22.

Henson testified that she cannot drive. R. 118. She testified that she takes short walks with her dog, washes dishes and cooks meals with some difficulty, and watches television. R. 122–23, 128. She testified that she does some chores, such as sweeping or laundry, but cannot do other chores, such as cutting grass or taking out the trash. R. 122–24, 128. She occasionally goes shopping with her daughter or mother. R. 125. She sleeps downstairs because she cannot climb the stairs. R. 125. She has problems sleeping due to the pain. R. 126. She testified that she does not need help with her own care, such as bathing and dressing. *Id.*

Henson testified that she has pain in her back, shoulders, chest, and down her left side due to fibromyalgia, a bulging disc, and sciatica. R. 127–28. She stated that about half of her day is spent laying down or resting. R. 129–30. She testified that she has difficulty sitting in one position, walking, pulling, or lifting. R. 133–34.

*(Vocational Expert – Robert Edwards)*

Robert D. Edwards, a vocational expert, testified that a hypothetical person with Henson's age, education, and work experience, who is able to perform light work, but who needs to be able to alternate between sitting and standing on an hourly basis, can only occasionally bend, stoop, or crouch, needs to avoid climbing ladders or scaffolding, and is limited to routine, repetitive tasks, could perform work as an office helper, a clerical checker, or a mail clerk. R. 137–38. He testified that these jobs exist in significant numbers in the national economy. R. 138. He then testified that the same individual, if also restricted to no more than sedentary work,

9

could perform work as an electronics inspector, a sorter, or an office clerk, and that these jobs all exist in significant numbers in the national economy. *Id.* Mr. Edwards then testified that such jobs would not exist for an individual who was also restricted to sitting no more than two hours out of an eight-hour workday or standing and walking no more than two hours out of an eight-hour workday. R. 138–39. Finally, Mr. Edwards testified that no jobs would exist for an individual who also had to take frequent breaks resulting in them being off task for more than 15 percent of the day. R. 139.

### III.    ALJ'S DECISION

To evaluate Henson's claim of disability,[3] the ALJ followed the sequential five-step analysis set forth in the SSA's regulations for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a). Specifically, the ALJ considered whether Henson: (1) was engaged in substantial gainful activity; (2) had a severe impairment; (3) had an impairment that meets or medically equals a condition within the SSA's listing of official impairments; (4) had an impairment that prevents her from performing any past relevant work; and (5) had an impairment that prevents engaging in any substantial gainful employment. R. 47–60.

---

[3] To qualify for DIB, an individual must meet the insured status requirements of the SSA, be under age 65, file an application, and be under a "disability" as defined in the Act. "Disability" is defined, for the purpose of obtaining disability benefits, as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). To meet this definition, the claimant must have a "severe impairment" making it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a).

On March 24, 2015, the ALJ found that Henson met the insured requirements[4] of the Social Security Act through December 31, 2017, and she had not engaged in substantial gainful activity since her alleged onset date of March 19, 2012. R. 52, 60. At steps two and three, the ALJ found Henson had four severe impairments: fibromyalgia, degenerative disk disease, depression, and anxiety. *Id.* The ALJ found that these impairments did not singly or in combination meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, as is required for a finding of disability at step three. R. 53–54 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). The ALJ found that Henson's remaining impairments were nonsevere because they did not last for a period of 12 months, were responsive to medication, did not require any significant medical treatment, or failed to result in any continuous vocational, exertional, or nonexertional limitations. R. 53.

The ALJ next found that Henson possessed a residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the exception that she "could alternate between sitting and standing hourly." R. 55–59. The ALJ's RFC determination also indicated that "[s]he could occasionally bend, stoop, and crouch" and that she "must avoid climbing ladders and scaffolding." R. 55. Finally, "she could perform no more than routine, repetitive [tasks]." *Id.* At step four of the analysis, the ALJ determined that Henson was unable to perform any past relevant work. R. 59. Finally, at step five, and after considering Henson's age, education, work experience, and RFC, the ALJ found that there were other jobs (such as office helper, clerical checker, and mail clerk), existing in significant numbers in the national economy, which Henson could have performed. R. 59–60. Accordingly, the ALJ concluded that

---

[4] To qualify for DIB, an individual must also establish a disability that commenced on or before the last day in which that individual met the insured status requirements of the Social Security Act. *See* 42 U.S.C. § 423(a), (c); 20 C.F.R. § 404.131(b).

Henson was not under a disability from March 19, 2012, the alleged onset date, through March 24, 2015, the date of the decision, and was ineligible for a period of disability or DIB. R. 60.

## IV.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record, and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance of evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

When reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589; *Hays*, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed, unless the decision was reached by means of an improper standard or misapplication of the law. *Perales*, 402 U.S. at 390; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980)). Thus, reversing the denial of benefits is

appropriate only if either (A) the record is devoid of substantial evidence supporting the ALJ's determination, or (B) the ALJ made an error of law. *Coffman*, 829 F.2d at 517.

## V.    ANALYSIS

Henson asserts that ALJ Dodson committed reversible error because (1) his opinion is contrary to the medical opinions rendered in the case and is therefore not supported by substantial evidence;[5] and (2) he did not seek additional medical evidence pursuant to the Appeals Council's order.

### A.  *The ALJ failed to explain the discrepancy between his RFC findings and the opinions of the state agency physicians.*

Henson argues that the ALJ's RFC finding of light work is not supported by substantial evidence because it runs contrary to the opinions of Henson's treating physician, Dr. Mapanao, and the two state agency physicians, Dr. Bacani-Longa and Dr. Constant. The Commissioner responds that Dr. Mapanao's opinion is not supported by objective medical evidence and that a light work RFC is consistent with the findings of the state physicians.

The regulations provide that an ALJ "will evaluate every medical opinion" presented to him, "[r]egardless of its source." 20 C.F.R. § 404.1527(c).[6] Medical opinions are defined in the regulation as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Accordingly, the ALJ must evaluate every medical opinion, explain what weight he assigns to it, and provide his reasons for assigning such

---

[5] Henson's brief frames his argument in three parts. ECF No. 12 at 5–12. The Court finds that it is clearer to treat Henson's first and third points together, as the Commissioner did. *See* ECF No. 14 at 11–16.

[6] The regulations have recently been amended, but the rules of section 1527 still apply to claims, such as Henson's, that were filed prior to March 27, 2017. *See* 20 C.F.R. § 404.1527.

weight. *See Lewis v. Berryhill*, 858 F.3d 858, 867–68 (4th Cir. 2017) (remanding because the ALJ did not explain why he failed to give the opinion of a treating physician controlling weight).

In discussing these three medical opinions, the ALJ went into detail about how, in his view, the treatment records did not support Dr. Mapanao's opinion as to the severity of Henson's limitations. R. 58. The ALJ found that the lack of objective medical limitations contradicted Dr. Mapanao's opinion that Henson was incapable of full-time work. *Id.* Specifically, the ALJ noted that Henson had a lack of swelling, full range of motion, normal EMF and nerve conductions studies, and only a mild disc protrusion. *Id.* Accordingly, he gave Dr. Mapanao's opinion "little evidentiary weight." *Id.* The ALJ explained in adequate detail his reasons for not giving great weight to Dr. Mapanao's opinion.[7] *See Sharp v. Colvin*, 660 F. App'x 251, 257–58 (4th Cir. 2016) (holding that the ALJ "did not summarily conclude that [the doctor's] opinion merited little weight," but instead "explained why he discredited [the doctor's] opinion"); *Chater*, 76 F.3d at 590 (holding that a physician's opinion may be given less weight it is not supported by clinical evidence or if it is internally inconsistent).

The ALJ "accorded great evidentiary weight" to the opinions of the two state physicians. R. 58. Henson argues that the ALJ's RFC nevertheless is incompatible with those opinions in two ways. First, both state physicians opined that Henson could stand or walk for a total of two hours in an eight-hour workday. R. 146, 159. Henson argues that the ALJ "increased her ability to stand/walk by 300% from 2 hours to 6 hours." ECF No. 12 at 9; *see* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). The ALJ in this case, however, did not find that Henson was capable of performing the full range of light work. R. 60. Instead,

---

[7] Henson does not argue that the ALJ violated the treating physician rule in his evaluation of Dr. Mapanao's opinions. *See* 20 C.F.R. § 404.1527(c)(1).

he placed certain limitations on Henson's work capability, such as that Henson could alternate between sitting and standing hourly. R. 55.

In response, the Commissioner argues that the medical opinion evidence that the ALJ relied on "was consistent with his RFC assessment of light work with restrictions." ECF No. 14 at 15. Under the regulations, a job is considered light work "when it requires a good deal of walking or standing, *or* when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b) (emphasis added). Based on this regulation, courts have frequently found a less than full range of light work assessment to be appropriate in situations where a claimant was limited to two hours of standing or walking. *See, e.g., Jones v. Comm'r*, No. SAG-16-936, 2017 WL 627383, at *2 (D. Md. Feb. 15, 2017) ("The restriction to approximately two hours of standing or walking rendered [the claimant] capable not only of sedentary work, but of a reduced range of light work that would permit her to sit for the majority of the time."); *Stone v. Colvin*, No. TMD 14-2338, 2015 WL 5315769, at *6 (D. Md. Sept. 9, 2015) ("[T]he state agency consultants' opinions regarding Plaintiff's capacity to stand and/or walk in an eight-hour workday rendered him capable not only of sedentary work, but of a reduced range of light work that would permit him to sit for the majority of the workday.") (internal citations omitted); *Hence v. Astrue*, No. 4:12cv1, 2012 WL 6691573, at *8 (E.D. Va. Nov. 30, 2012) ("[A]n RFC limiting standing or walking to about two hours does not mandate a finding that [the claimant] could *only* perform sedentary work.").

Even if the state physicians' opinions are consistent with a definition of limited light work, however, there are still discrepancies between those opinions and the RFC that go unaddressed by the ALJ. An RFC that allows Henson to alternate between sitting and standing hourly differs from restricting her to standing or walking for only two hours. The ALJ expressly

noted the two-hour limitation in the state physicians' opinions and accorded those opinions great weight, but then did not actually include that limitation in the RFC. It is not clear to the Court whether the ALJ intended to adopt the state physicians' limitation with respect to that matter or not.

Even if he did, and even if the limitations described by the state physicians are consistent with a limited range of light work, it was not the ultimate opinion of either state physician that Henson could perform light work. Both Dr. Bacani-Longa and Dr. Constant opined that, "[b]ased on the seven strength factors of the physical RFC (lifting/carrying, standing, walking, sitting, pushing, and pulling), the individual demonstrates the maximum sustained work capability for the following: SEDENTARY." R. 148, 161. Both state physicians then applied grid 201.21, which only applies if the maximum sustained work capability is sedentary. *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 2 (Table 1). The ALJ did not attempt to distinguish his reasoning from the reasoning of the state physicians in any way, instead stating that their opinions were "consistent with mild radiographic findings [and] physical exam findings." R. 58.

This case bears a striking similarity to *Bisceglia v. Colvin*, 173 F. Supp. 3d 326 (E.D. Va. 2016). In *Bisceglia*, two state agency medical consultants opined that the claimant had the maximum sustained work capacity for sedentary work. *Id.* at 330. There was no other medical opinion evidence in the record. *Id.* The ALJ gave "significant weight" to the consultants' opinions, but then concluded that the claimant could perform less than a full range of light work. *Id.* at 329–30. The court remanded the case, finding that "[t]he ALJ failed to reconcile the discrepancy between his RFC findings and the opinions of the state agency medical consultants." *Id.* at 331.

The same can be said of the ALJ in this case. It could be that the ALJ agreed with the state's physicians about what Henson's limitations were, but simply disagreed about whether those limitations could be characterized as less than the full range of light work or as sedentary. This is pure speculation, however, because all the ALJ actually stated was that he accorded those opinions great weight. The Fourth Circuit has repeatedly criticized such conjecture, and has admonished ALJs to be more explicit in their reasoning. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. 2015) (unpublished) ("[I]t is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015) ("Because we are left to guess about how the ALJ arrived at his conclusion on [the claimant's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.").

Additionally, the Court notes that the error is not harmless. The ALJ found that "transferability of job skills is not material to the determination of disability" because the light work grid leads to a finding of "not disabled" either way. R. 59; 20 C.F.R. Pt. 404, Subpt. P, App. 2 (Table 2). This is not the case if Henson could perform only sedentary work. Viewing Henson as skilled or semi-skilled, as the ALJ did, R. 59, the potential applicable sedentary grids are 201.14, 201.15, or 201.16.[8] 20 C.F.R. Pt. 404, Subpt. P, App. 2 (Table 1). Under those

---

[8] Both state physicians applied 201.21, which applies for claimants between the ages of 45 and 49. R. 148, 161. While Henson fell in that age range at the time of her consultative evaluations,

grids, Henson may be disabled or not disabled depending on whether her skills are transferrable or whether there is the possibility of direct entry into skilled work, issues which were not discussed by the ALJ. *Id.* Thus, the difference between Henson's ability to perform light work versus sedentary work could lead to opposite conclusions under the grid. Additionally, the VE testified that no jobs would exist for an individual who is restricted to sedentary work and who cannot sit for more than two hours or stand and walk for more than two hours, meaning that if Henson were restricted to only sedentary work, there would be no jobs available. R. 138–39. These facts amplify the ALJ's error in not reconciling the discrepancies between his RFC and the medical opinion evidence in the record.

## B. *The ALJ properly complied with the Appeals Council's remand order.*

Henson argues that the ALJ did not conform to the Appeals Council's remand order. ECF No. 12 at 7–9. Specifically, Henson argues that the ALJ did not "develop the evidentiary record in accordance with the regulations." ECF No. 12 at 7. She argues that the ALJ was required to seek a consultative examination and did not do so. *Id.* The Commissioner argues that the decision of whether to seek a consultative examination was discretionary. ECF No. 14 at 16–17.

The Appeals Council may, "within 60 days after the date of a decision or dismissal . . . decide on its own motion to review the action that was taken." 20 C.F.R. § 404.969(a). The Appeals Council may choose to review a case if "[t]he action, findings or conclusions of the administrative law judge are not supported by substantial evidence." 20 C.F.R. § 404.970(a)(3). The Appeals Council may choose to remand a case to an ALJ. 20 C.F.R. § 416.1477(a). An ALJ "shall take any action that is ordered by the Appeals Council and may take any additional

she was 51 at the time of the ALJ's decision, which is considered to be closely approaching advanced age. *See* 20 C.F.R. § 404.1563.

action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b).

The Appeals Council's order instructed the ALJ to "[o]btain additional evidence concerning the claimant's physical and mental impairments in order to complete the administrative record." R. 178. The order stated that "the additional evidence may include, if warranted and available, updated psychological/psychiatric and orthopedic consultative examinations and medical source statements about what the claimant can still do despite the impairments." *Id.* at 178. By the plain language of this order, the Appeals Council left it to the ALJ's discretion to order a consultative examination if he considered it warranted.

Nor do the cases cited by Henson (none of which is from the Eastern District of Virginia) compel a different conclusion. These cases involved more particular instructions to an ALJ that were not followed. *See, e.g., Abbott v. Colvin,* No. 3:15cv12801, 2016 WL 7228897, at *24 (S.D.W. Va. Nov. 21, 2016) (remanding, in part, because the Appeals Council explicitly instructed the ALJ to assess the claimant's ability to stand or walk and the ALJ did not do so, and such failure may have impacted the VE's testimony); *Scott v. Barnhart,* 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009) (remanding, in part, because the Appeals Council instructed the ALJ to issue a new hypothetical to the VE, and the ALJ did not do so);[9] *Savino v. Astrue,* No. 7cv4233(DLI), 2009 WL 2045397, at *9 (E.D.N.Y. July 8, 2009) (remanding, in part, because the Appeals Council instructed the ALJ to obtain new testimony from a different medical expert to assist in resolving any conflicts and the ALJ confined the expert's testimony to a single conflict).

---

[9] The ALJ in *Scott* went so far as to state in his decision that "the Appeals Council Order . . . is pure speculation beyond the scope of the Appeals Council's authority and not supported," a clear indication to the court that he was not following the Appeals Council's order. *Scott,* 592 F. Supp. 2d at 371.

The Appeals Council's instruction in this case was broader in requesting that the ALJ take further evidence of the claimant's physical and mental impairments. R. 178. By not focusing on a specific limitation or a specific physician's opinion, the Appeals Council left more discretion to the ALJ in this case than the Appeals Council did in the above cited cases. The ALJ followed the Appeals Council's order when he held a new hearing, took testimony from Henson and a new VE, testimony that constituted additional evidence. Accordingly, this is not a basis for remand.

## VI.    RECOMMENDATION

For the foregoing reasons, the Court recommends that plaintiff's motion for summary judgment, ECF No. 11, be **GRANTED IN PART** and **DENIED IN PART**, defendant's motion for summary judgment, ECF No. 13, be **DENIED**, and the decision of the Commissioner be **VACATED** and **REMANDED**, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this report and recommendation. To the extent plaintiff's motion for summary judgment seeks a reversal and an award of benefits, it is **DENIED**.

## VII.    REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's

objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
December 1, 2017